UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTLE CAESAR ENTERPRISES,
INC., *et al*.,

      Plaintiffs,

v.                                                          Civil Case No. 21-11776
                                                            Honorable Linda V. Parker

S&S PIZZA ENTERPRISES, INC., *et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 27)

This action arises out of an alleged breach of contract involving a restaurant franchise agreement and claims of trademark infringement. Plaintiffs Little Caesar Pizza Enterprises, Inc. ("LCE") and LC Trademarks, Inc. (collectively "Plaintiffs") bring this action against franchisee S & S Pizza Enterprises, Inc. ("S & S"), and signatories to the franchise agreement, Sherly Claeys and Suzanne L. Matthews (collectively, "Defendants"). On September 2, 2021, Plaintiffs filed a Complaint alleging the following claims: breach of contract (Count I); trademark infringement (Count II); unfair competition (Count III); and trade dress infringement (Count IV). (ECF No. 1.) The matter is presently before the Court on "Plaintiffs' Motion for Partial Summary Judgment" filed on November 30, 2022. (ECF No. 27.) As

of the date of this order, Defendants have not filed a response.  For the reasons that follow, the Court grants Plaintiffs' motion.

## STATEMENT OF FACTS

LCE, a Michigan corporation with its principal place of business in Detroit, Michigan, provides licenses for independent businesses to operate Little Caesars restaurants using its system of operation and related trademarks in exchange for royalties and compliance pursuant to a Franchise Agreement.  LC Trademarks owns numerous registrations for the mark 'Little Caesars' and other trademarks[1] ("the Little Caesars Marks").  LC Trademarks licenses the marks to LCE, which then licenses them to Little Caesars franchisees.  Defendant S & S is a former Little Caesars franchisee that owned and operated two Little Caesars locations under two separate franchise agreements: (1) 2055 Gratiot Boulevard, Unit 11, Marysville, MI 48040  ("Marysville Franchise"); and (2) 26190 Crocker Boulevard, Harrison Township, MI 48040 ("Harrison Township Franchise"). Defendants Sherly Claeys and Suzanne Matthews signed both franchise agreements on behalf of S & S, agreeing to be bound to the obligations under the agreements.  (ECF Nos. 27-4, 27-5.)

---

[1] Registration Nos. 2036763, 2028607, 2259637, 3904450, and 3925216.

*Obligations Under The Franchise Agreements*

In signing the Franchise Agreements,  Defendants agreed to comply with the obligations under the contract in exchange for the right to use the Little Caesars trademarks and operating systems.  Those obligations and agreements[2] included, but were not limited to, the following:

- [D]uty to prepare and preserve, for at least four years, complete and accurate books, records, and accounts related to Defendants' franchised restaurants, in the form and manner prescribed by [LCE] from time to time. [Ex. 1, ECF No. 27-4 §11.1, Pg ID 213]

- [P]rovide to [LCE] weekly reports of Defendants' gross sales and quarterly financial statements for the franchises.  (*Id.* § 11.3)

- [T]o timely pay [LCE] the royalties and advertising fees owed on the gross sales of Defendants' franchised restaurants. (*Id.* §§ 3.2, 3.3, 3.4, 9[,] [ Pg ID 193–94, 209].)

- Defendants agreed that they would be in default of the Franchise Agreements if they failed to substantially comply with any of the requirements imposed by the Agreements.  (*Id.* §§ 13.2, 13.3[,] [Pg ID 219, 221].)

- [Defendants] agreed that [LCE] would have the right to terminate the Franchise Agreements if they failed to cure any default within thirty days of receiving written notice from [LCE] of the default. (*Id.* § 13.3)

---

[2] Plaintiffs reference the most recent Franchise Agreement, ECF No. 27-4, throughout its motion because in signing the recent version, Defendants agreed to amend the terms of the prior Franchise Agreement, ECF No. 27-5, to comport with the new terms as the newer version supersedes the previous terms under the clause titled, "Amendment of Prior Agreements."  (Ex. 1, §25.2, ECF No. 27-4 at Pg ID 235.)

- Certain defaults,[3] however, could not be cured and the parties expressly agreed that in the event of their occurrence [LCE] had the right to immediately terminate the Franchise Agreements upon notice. (*Id.* § 13.2.)

- Defendants agreed to operate their franchises for an initial term of ten years. (*Id.* § 2.1)

- They agreed that any right to renew that term was contingent on, among other things, them not being in default under the Agreement and having otherwise substantially complied with the terms of all agreements with [LCE].   (*Id.* § 2.3.)

(ECF No. 27 ¶¶ 5–10, 12–13,  Pg ID 154–56.)

Defendants also agreed to numerous post-termination obligations under the Franchise Agreements.  First, Defendants agreed to only use the Little Caesars trademarks in a manner authorized by LCE, and such right would cease upon the

---

[3] According to the Franchise Agreements, the following are incurable defaults:

> (i) Defendants' abandonment of any of their franchised restaurants (or the failure to continuously operate a restaurant for a period of three consecutive days); (ii) the termination of any lease for the restaurant premises; (iii) Defendants' receipt of three or more default notices from [LCE] within any twelve-month period (regardless of the reason for the default), or receipt of three or more default notices for the same default during the term of the Franchise Agreement; (iv) Defendants' refusal to permit [LCE] to inspect Defendants' books and records related to the franchised restaurants; and (v) if any other Franchise Agreement between Defendants and [LCE] was terminated. (*Id.* §§ 13.2.2, 13.2.9, 13.2.10, 13.2.19, 13.2.21, 13.4 [at Pg ID 219–21].)

(ECF No. 27 at Pg ID 155–56.)

4

termination of the Franchise Agreements.  (Ex. 1, ECF No. 27-4 §14.2, Pg ID 222).

The post-termination obligations also included:  "(i) not, directly or indirectly, [to]

represent to the public or hold themselves out as a present or former Little Caesars

franchisee; (ii) immediately return the operating manuals and other documents that

contained [LCE's] confidential information; and (iii) pay all sums ow[ed] to

[LCE]."  (ECF No. 27  ¶ 11, Pg ID 155–56 (citing ECF No. 27-4 §§ 14.1, 14.6,

14.9, Pg ID 221, 223, 224).)  Defendants also agreed to a non-compete clause,

which prohibited them, in relevant part, from the following:

> . . . either directly or indirectly, for itself, or through, on behalf
> of, or in conjunction with any person, persons, or legal entity,
> own, maintain, advise, operate, engage in, be employed by, make
> loans to, or have any interest in or relationship or association with
> a business which is a quick or fast service restaurant engaged in
> the sale of pizza, pasta, sandwiches, chicken wings, and/or
> related products . . . for a continuous uninterrupted two (2) year
> period with respect to the Designated Market Area in which
> Franchisee's Restaurant was located.

(ECF No. 27-4 § 15.3, Pg ID 225.)

The Franchise Agreements also contemplated damages for any premature

termination of the contract in the form of liquidated damages paid to LCE.  (*See id.*

§ 14.8 at Pg ID 223.)

<u>Defaults Under the Franchise Agreements</u>

Between July 2017 and September 2019, Defendants received three notices

of default from LCE due to a failure to submit the required financial statements for

the two franchise locations for quarters 1–4 of fiscal year 2017 and quarters 1 and 2 of fiscal year 2019.  (*See* ECF Nos. 27-6, 27-7, 27-8.)  On April 9, 2021, LCE sent a fourth notice of default to Defendants notifying them that they were once again in default for failure to submit the required financial statements for quarter 4 of fiscal year 2019 and quarters 1–4 of fiscal year 2020.  (Ex. 6, ECF No. 27-9.)  Similar to the previous three notices of default, the one from April 9 notified Defendants that a failure to cure by submitting missing statements within thirty days could result in the Franchise Agreements being terminated.  (*Id.* at Pg ID 302.)  Because Plaintiffs failed to cure the default, LCE sent a letter titled "Notice of Default and Notice of Franchise Agreement Termination" on June 2, 2021, which notified Defendants that the Franchise Agreements were terminated.  (Ex. 7, ECF No. 27-10 at Pg ID 304–05.)

According to Plaintiffs, on or around March 29, 2021, Defendants ceased operating and abandoned its Marysville Location Franchise without LCE's approval.  The Franchise Agreement term was set to expire on August 31, 2026.  On July 30, 2021, LCE sent Defendants a fifth default notice titled, "Notice of Default and Supplemental Notice of Franchise Termination."  (Ex. 8, ECF No. 27-11 at Pg ID 308.)  The July 30 notice explained that Defendants were in default of their post-termination requirements for a failure to provide quarterly financial statements for the first two quarters in 2021 and for their abandonment of the

Marysville Franchise Location.  (*Id.* at Pg ID 310.)  The supplemental termination notice also informed Defendants that if they contested the termination, LCE would not enforce the termination but would instead seek judicial review.  (*Id.* at Pg ID 311.)  Because Defendants contested the termination of the Franchise Agreement, Defendants filed the instant action on September 2, 2021.

<u>Additional Defaults & Eviction from the Harrison Township Franchise Location</u>

During the pendency of this action, Plaintiffs allege that Defendants have committed additional post-termination defaults under the Franchise Agreement.  In and around December 2021 and January 2022, Defendants again failed to make royalty and advertising payments regarding the Harrison Township Franchise.  In response, on February 10, 2022, Plaintiffs sent the sixth notice titled "Notice of Default and Supplemental Termination of Franchise Agreement," informing Defendants of the additional grounds for termination.  (Ex. 9, ECF No. 27-12 at Pg ID 315.)  Because this was the third default related to the Harrison Township Franchise in a twelve month period, *see* ECF Nos. 27-6, 27-8, 27-9, and the Harrison Township Franchise was set to expire on February 25, 2022, under the agreement, ECF No. 27-2 at Pg ID 289, LCE notified defendants that the franchise would expire on February 25, 2022, in a nonrenewal notice.  (Ex. 10, ECF No. 27-13 at Pg ID 318–19.)

7

Finally, in May of 2022, LCE became aware that the landlord for the

Marysville Franchise location terminated the lease agreement in early 2022 and

initiated eviction proceedings against Defendants.  *See Village Green Plaza*

*Assocs. Ltd. P'ship v. S & S Pizza Enters., Inc.*, No. 22-PO-1353-LT (Mich. 72nd

Jud. Dist. Ct. Mar. 17, 2022).  The 72nd District Court of Michigan issued an

"Order of Eviction" on April 27, 2022.  (Ex. 11, ECF No. 27-14 at Pg ID 322.)  On

June 9, 2022, LCE sent the seventh default notice to Defendants due to the lease

termination at the Marysville Franchise location.  (Ex. 12, ECF No. 27-15 at Pg ID

324–25.)  As of June 10, 2022, Defendants closed the Harrison Township

Franchise location.

## LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry when

evaluating a summary judgment motion is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 251–52 (1986).  After adequate time for discovery and upon motion,

Rule 56 mandates summary judgment against a party who fails to establish the

existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. Ordinarily, the court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

"When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Celotex Corp., 477 U.S. at 322–23). In cases such as the present motion, "where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. Nationwide, Inc.*, 767 F.3d 611,

9

630 (6th Cir. 2014); *Glob. Freight, Inc. v. Tremell*, 633 F. Supp. 3d 985, 991 (E.D. Mich. 2022).

## ANALYSIS

### Breach of Contract

In the motion, Plaintiffs move for summary judgment on their claim for breach of contract (Count I) against Defendants based on the repeated defaults under the Franchise Agreements.  In order to establish a breach of contract claim under Michigan law, a plaintiff must establish that "(1) there was a contract; (2) which the other party breached; and (3) thereby resulting in damages to the party claiming breach." *El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019) (quoting *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)) (internal quotations omitted).  Parties do not dispute that there were valid contracts, which were signed by both Defendants.  (*See* ECF No. 27-4 at Pg ID 240; ECF No. 27-5 at Pg ID 288.)

Next, the Court must determine whether there was a breach of the terms of the Franchise Agreement.  Under Michigan law, "[t]he primary goal of contract interpretation is to honor the intent of the parties." *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666–67 (Mich. Ct. App. 2000) (citation omitted).  In order to achieve that goal, courts must read the contract as a whole. *Id.*  If the contractual language is "clear and unambiguous, the terms are to be taken and understood in their plain,

10

ordinary, and popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 514 N.W.2d 185, 188 (Mich. Ct. App. 1994).  Michigan "[c]ourts are governed by what the parties said and did, and not merely by their unexpressed subjective intent." *Fletcher v. Bd. of Ed. of Sch. Dist. Fractional No. 5, Brighton & Genoa Tps., Livingston Cnty.*, 35 N.W.2d 177, 180 (Mich. 1948)

Based on the evidence in the record, the Court finds that Defendants committed a plethora of breaches under the clear and unambiguous terms of the contracts.  Included amongst the many breaches, Defendants were required to provide records and quarterly financial reports, which they failed to do on numerous occasions, leading LCE to send notices of default.  (*See* ECF No. 27-1 §§11.1, 11.3, Pg ID 213; ECF Nos. 27-6, 27-7, 27-8, 27-9.)  Rather than cure the breaches as allowed in the Franchise Agreements, Defendants took no action.  Additionally, after discovering that Defendants abandoned the Marysville Franchise without permission, which is also a breach of the Franchise Agreement, *see* ECF No. 27-4 §13.2.2, Pg ID 219, LCE sent another notice for default and termination.  (Ex. 8, ECF No. 27-11 at Pg ID 308.)

To make matters worse, even after LCE initiated this action against Defendants for their recurrent breaches,  Defendants continued to commit breaches under the Franchise Agreement by (1) failing to make royalty and advertising fee payments, *see* ECF No. 27-2 ¶ 17, Pg ID 177; ECF No. 27-4 § 3.2, Pg ID 193, and

11

(2) receiving an eviction order against the Marysville Franchise location, *see* Lester Decl., ECF No. 27-2 ¶ 20, Pg ID 178; ECF No. 27-4 § 13.2.9, Pg ID 220. The Michigan Franchise Investment Law, Mich. Comp. Laws § 445.1527(c), "prohibits any provision in a franchise agreement that permits a franchisor to terminate a franchise prior to the expiration of its term except for good cause." *7-Eleven, Inc. v. CJ-Grand, LLC*, 517 F. Supp. 3d 688, 693 (E.D. Mich. 2021) (quotations and citation omitted).  Although the statute does not explicitly define what constitutes 'good cause,' it does provide that it "shall include the failure of the franchisee to comply with any lawful provision of the franchise agreement and to cure such failure after being given written notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure such failure." *Id.* (quoting Mich. Comp. Laws § 445.1527(c)).  The Court finds that due to the number and flagrant nature of the breaches pursuant to the terms of the Franchise Agreement, combined with the seven notices of default and Defendants' failure to cure them in the allotted 30 days, Plaintiffs had good cause to terminate the Franchise Agreements.

## Liquidated Damages & Attorneys' Fees

Plaintiffs also seek liquidated damages and contractual attorneys' fees for the breach.  "Under Michigan law, liquidated-damages provisions are enforceable 'if the amount is reasonable with relation to the possible injury suffered and not

12

unconscionable or excessive.' " *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017) (quoting *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 (Mich. Ct. App. 1998))  "Liquidated damages are especially appropriate 'where the damages which would result from a breach are uncertain and difficult to ascertain' when the contract is executed." *Id.* (quoting *Moore v. St. Clair County*, 328 N.W.2d 47, 50 (Mich. Ct. App. 1982))  As a general rule, courts "give effect to the parties' intent and enforce liquidated-damages provisions unless 'it is obvious from the contract ... that the principle of compensation has been disregarded.' " *Id.* (quoting *Curran v. Williams*, 89 N.W.2d 602, 605 (Mich. 1958) (alterations in original).

Here, Plaintiffs submitted an affidavit from its Vice President for Compliance, Scott Haveman, who calculated the royalties and advertising fees, as well as liquidated damages.  (Haveman Aff., ECF No. 27-3 ¶ 2–3, Pg ID 180–81.) In Haveman's affidavit, he thoroughly outlines the process he used as set forth in Section 14.8 of the Franchise Agreement, *see* ECF No. 27-4 § 14.8, Pg ID 223, along with listing the metrics he used for his calculations to arrive at a total of $128,818.56 in liquidated damages.  The Court finds that a reasonable juror could conclude that Haveman's affidavit contains a viable conclusion and provides a reasonable basis from which to calculate damages.  This conclusion is consistent

with this district's opinion analyzing the same liquidated damages provision at issue here. *See, e.g., Little Caesar Enters., Inc. v. Reyes 1, Inc.*, 19-cv-11437, 2020 WL 2395206 (E.D. Mich. May 11, 2020) (enforcing the same liquidated damages provision).

Similar to liquidated damages, Michigan law also recognizes contractual provisions that provide for reasonable attorneys' fees. *See Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *6 (E.D. Mich. Sept. 13, 2007) (quoting *Farm Servs. v. JBL Enters.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996)) ("Attorneys' fees provisions in contracts are generally upheld by our courts as valid and enforceable.")  Under Section 23.9 of the Franchise Agreement, in the event of a breach, Defendants are required to pay LCE's attorneys' fees and costs incurred during litigation.  (ECF No. 27-4 § 23.9, Pg ID 233.)  The Court finds this provision, on its face, to be valid and enforceable. *See, e.g.*, *Reyes 1, Inc.*, 2020 WL 2395206, at *7 (finding the same attorneys' fee provision enforceable).

## CONCLUSION

For the reasons stated above, the Court finds that Defendants breached their contract and must pay the requisite liquidated damages and attorneys' fees pursuant to the Franchise Agreement.  There are no genuine issues of material fact as to Plaintiffs' breach of contract claim.

Accordingly,

**IT IS ORDERED**, that "Plaintiffs' Motion for Partial Summary Judgment"

(ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED**, that the breach of contract claim (Count I)

is **DISMISSED**.

**SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: August 24, 2023

15